IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PINNACLE LABEL, INC.,            §
                                 §
                Plaintiff,       §
                                 § Civil Action No. 3:09-CV-0950-D
VS.                              §
                                 §
SPINNAKER COATING, LLC,          §
                                 §
                Defendant.       §

MEMORANDUM OPINION
AND ORDER

Defendant Spinnaker Coating, LLC ("Spinnaker") moves to dismiss the claims against it for lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, and, pursuant to Fed. R. Civ. P. 9(b), for failure to state with particularity circumstances constituting alleged fraud. Alternatively, Spinnaker moves to transfer this action to the Southern District of Ohio under 28 U.S.C. § 1404(a).[1] For the reasons that follow, the court grants Spinnaker's motion to dismiss the state-law claims against it for lack of personal jurisdiction, and it grants Spinnaker's alternative motion to transfer the

_____

[1]Spinnaker filed a motion to dismiss on July 6, 2009 and also filed a motion to transfer venue. The motion to transfer venue states that it is filed in the alternative to the motion to dismiss. Spinnaker also filed on July 6, 2009 a combined appendix in support of its motions to dismiss and to transfer. Pinnacle responded to both motions in separate responses and briefs filed on July 27, 2009. Pinnacle also filed on July 27, 2009 a combined appendix in support of its responses to the motions to dismiss and to transfer. Spinnaker filed reply memoranda on August 11, 2009. On August 25, 2009 Spinnaker filed a corrected motion to transfer venue and a corrected reply in support of its motion to transfer venue.

remaining claims to the Southern District of Ohio.

I

Plaintiff Pinnacle Label, Inc. ("Pinnacle") is a Texas corporation currently operating solely out of Dallas, Texas. In 1998 Pinnacle, acting through its subsidiary, Pinnacle Manufacturing, Inc. ("PMI"), purchased New Leaf Label, Inc.'s manufacturing plant in Buffalo, New York, where it began to manufacture adhesive label products. By 2005 Pinnacle had closed its former office in Dallas and opened a small office in a Dallas apartment used by W. Ches Cochran ("Cochran"), its President, sole shareholder, and founder, as a residence. Buffalo and the manufacturing plant there became the primary place of business for Pinnacle, although Cochran continued to visit Dallas regularly. In April 2009 Pinnacle sold its operating assets to Prologue Label, Inc. ("Prologue") and closed its Buffalo office, making Dallas its only place of operation.

Spinnaker is a Delaware corporation with its principal place of business in Troy, Ohio. In November 2006 Spinnaker entered into a Technology Transfer Agreement ("TTA") with Pinnacle, purchasing an exclusive license to sell and manufacture Pinnacle's proprietary "Clean Edge Technology" labels. The contract was negotiated between Pinnacle and Spinnaker over the telephone, email, and in meetings that took place in the Ohio and New York offices of the companies. The contract provided that all notices under the

- 2 -

agreement should be made to the Ohio and New York locations of Spinnaker and Pinnacle, respectively.  Pinnacle's Buffalo employees were to teach Spinnaker employees to produce the Clean Edge labels and provide technical support.  In addition, Spinnaker would receive Pinnacle's client contacts.  The labels would then be produced by Spinnaker in Ohio, and Pinnacle would receive royalties on label sales.

Around the same time, Cochran entered into a Sales Representative Agreement under which he agreed to work as an independent contractor for Spinnaker, marketing Spinnaker's full line of products to Texas and Louisiana customers.  Cochran made numerous trips to Texas in this capacity, going on sales calls, conducting open houses for Texas customers, coordinating care packages of Spinnaker marketing materials for Spinnaker's Texas customers, and engaging in other activities.  Spinnaker's management and Cochran attended monthly meetings to plan sales strategies for the Texas and Louisiana regions.  Cochran used Spinnaker business cards that listed the address of his Dallas Pinnacle office.  In July 2008 Cochran resigned as the Texas sales representative and assisted Spinnaker in transitioning to a new Texas sales representative.

In May 2009 Spinnaker discovered that Pinnacle had sold its assets to Prologue, and it sent Pinnacle a letter terminating the TTA.  Pinnacle contends that it upheld its obligations under the

TTA (a fact that Spinnaker disputes), but that Spinnaker failed to make required royalty payments and quarterly reports and breached the implied covenant to manufacture and sell reasonable quantities of the Pinnacle labels.  Pinnacle also alleges that Spinnaker is selling labels bearing Pinnacle's trademarks "EZY Peel" and "Recyclabels," trademarks that were not included as part of the TTA.  Cochran purchased labels bearing these marks in a Farmers Branch, Texas store in July 2009.

Pinnacle sues Spinnaker on various Lanham Act claims and on state-law claims.  The Lanham Act claims arise out of Spinnaker's alleged sale of labels bearing Pinnacle's "EZY Peel" and "Recyclabels" trademarks, and include trademark infringement under 15 U.S.C. §§ 1114 and 1117, unfair competition under 15 U.S.C. § 1125(a), and false description under 15 U.S.C. § 1125(a) (collectively, the "Lanham Act claims").  The state-law claims, which arise out of the TTA, are for fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, breach of contract, and negligence (collectively, the "state-law claims").

II

The court considers first Spinnaker's challenge to the court's exercise of personal jurisdiction over it.

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the non-

resident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).  The determination whether a federal district court has personal jurisdiction over a nonresident defendant is bipartite.  The court first decides whether the long arm statute of the state in which it sits confers personal jurisdiction over the defendant.  If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution.  *See, e.g., Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).  Because the Texas long arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over the defendant would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.; Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted).  To determine whether exercising jurisdiction would

- 5 -

satisfy traditional notions of fair play and substantial justice, the court examines "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Berry v. Lee*, 428 F.Supp.2d 546, 557 (N.D. Tex. 2006) (Fitzwater, J.) (citations omitted).

A defendant's contacts with the forum may support either specific or general jurisdiction. *Mink*, 190 F.3d at 336 (citations omitted). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* In the case of specific jurisdiction, "the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Further, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The defendant must have personally availed himself of "the privilege of conducting

- 6 -

activities within the forum State, thus invoking the benefits and protections of its law." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  By requiring "purposeful availment," courts ensure that defendants are not haled into their jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted).

When, as here, the court considers a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true all uncontroverted allegations in the complaint and resolve any factual conflicts in favor of the plaintiff. *Latshaw*, 167 F.3d at 211.  "Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction." *Id.*  "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

III

The court turns initially to the question whether it can exercise specific personal jurisdiction over Spinnaker.

A

"A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006). Pinnacle's argument for personal jurisdiction over Spinnaker in relation to the Lanham Act claims arises out of the sale of the allegedly infringing labels in the state of Texas. Pinnacle's argument for personal jurisdiction over Spinnaker in relation to the state-law claims arises out of Spinnaker's contract with Pinnacle, a Texas corporation.

B

The court finds that Spinnaker's sale of the labels at issue in the Texas market is sufficient to make a prima facie showing of specific personal jurisdiction regarding Pinnacles's Lanham Act claims. Cochran himself purchased them in a Farmers Branch, Texas store in July 2009. Spinnaker acknowledges that 3.6% of the Pinnacle labels it distributed were sold in Texas, although it does not concede that these labels were in any way infringing.[2] Pinnacle has established that Spinnaker was seeking customers in

_____

[2]Pinnacle asserts that 6.4% of Spinnaker's sales of Pinnacle products took place in Texas, but this factual dispute is immaterial.

- 8 -

Texas for its products more generally, supporting Pinnacle's assertion that these labels were sold in Texas as part of a purposeful campaign by Spinnaker to sell its products in Texas. *See, e.g.,* P. App. 5 ("Cynda Magot, of Spinnaker Sales, sent [Cochran] an email: 'I can't wait to get things started in the Texas area.'"). For example, Spinnaker paid Cochran to represent it as a sales representative in the Texas region, it paid for open houses to target Texas customers, and it sent marketing "care packages" to 17 Texas customers. Further, Kevin Ahlfeld ("Ahlfeld"), Spinnaker's Vice President, Merchant Business, traveled to Texas in January 2007 to meet with potential customers, including the customer in whose store Cochran later purchased the allegedly infringing labels. Pinnacle has made a prima facie showing that Spinnaker intended to sell its products, including the labels at issue, in Texas.

"[P]lacing a product into the stream of commerce, at least where the defendant knows the product will ultimately reach the forum state," is sufficient purposeful availment to supply specific personal jurisdiction. *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (holding in trademark infringement case that sale of allegedly infringing products to Wal-Mart, which then sold them in Louisiana, was sufficient to create minimum contacts required for specific personal jurisdiction in Louisiana). "Where a defendant knowingly benefits from the availability of a

- 9 -

particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state." *Id.* Spinnaker's Texas sales and sales campaign establish that it should have reasonably anticipated being haled into court in Texas.

Accordingly, concerning Pinnacle's Lanham Act claims, the court holds that Pinnacle has made a prima facie showing that Spinnaker sold allegedly infringing labels in Texas.

C

The court considers next whether exercising personal jurisdiction related to the Lanham Act claims would violate traditional notions of fair play and substantial justice. It finds that it would not.

"[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Spinnaker has presented no such compelling reasons. The forum state, Texas, has an interest in infringing products sold here and has an interest in a trademark owned by a Texas corporation. Considering Pinnacle's choice of forum and Spinnaker's solicitation of the Texas market, the court finds exercising personal jurisdiction regarding these claims comports with due process.

D

Because Spinnaker's state-law claims all arise out of the TTA, for the court to exercise specific personal jurisdiction over them, the claims must arise from the negotiation and contemplated performance of the TTA, not from any dealings Spinnaker had with Texas outside of the TTA.

Under the Due Process Clause of the Fourteenth Amendment, "the mere contracting with a resident of the forum state is not in itself sufficient to establish minimum contacts such that the forum state may exercise personal jurisdiction over the defendant." *Brammer Eng'g, Inc. v. E. Wright Mountain L.P.*, 307 Fed. Appx. 845, 847-48 (5th Cir. 2009) (per curiam) (citing *Burger King*, 471 U.S. at 479). Further, in *Brammer* the Fifth Circuit found that activities incidental to forming a contract——such as communications and requests for documents, etcetera sent to the forum state because the forum state was the home of one of the parties to the contract——were insufficient to constitute purposeful availment and the minimum contacts required to support personal jurisdiction. *Id.* at 848. Instead, the Fifth Circuit looked to the anticipated performance of the contract, choice-of-law provisions, and other relevant factors to determine specific personal jurisdiction. *See id.; see also Burger King*, 471 U.S. at 479 ("It is these factors——prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course

of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.").

Even if the court assumes, despite the varying accounts of the parties, that Pinnacle was headquartered in Texas when the TTA was negotiated, this fact alone would be insufficient to establish sufficient minimum contacts for the exercise of personal jurisdiction. The TTA was negotiated without anyone from Spinnaker's ever traveling to Texas; meetings instead took place in Ohio and New York. Performance of the TTA—the transfer of the technology and the conferring of a license to use the Pinnacle brand—took place mainly at Spinnaker's Troy, Ohio headquarters and PMI's Buffalo, New York manufacturing plant. Spinnaker's employees were trained at Pinnacle's Buffalo location. In addition, the contract contemplated that Spinnaker would take over the marketing and further manufacturing of the Pinnacle labels from Ohio. And the TTA designates the Ohio and New York locations as the places of notice and payment for Spinnaker and Pinnacle, respectively. Pinnacle has presented no evidence other than its own citizenship to suggest that the contract supplied Spinnaker with minimum contacts to Texas. Therefore, the court holds that it lacks specific jurisdiction over Spinnaker with respect to Pinnacle's state-law claims.

E

Although the court lacks personal jurisdiction over Spinnaker regarding the state-law claims, it may exercise pendent personal jurisdiction if it finds that the state-law and Lanham Act claims arise from a common nucleus of operative fact.

> Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim.

*United States v. Botefuhr*, 309 F.3d 1263, 1272-73 (10th Cir. 2002) (citing 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.7 (3d ed. 2002), and later adopting the doctrine). "In essence, once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction." *Id*. at 1272. "[A] defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim. Notions of fairness to the defendant simply are not offended in

- 13 -

this circumstance."  4A Wright & Miller, *supra*, § 1069.7, at 228-29 (approving pendent personal jurisdiction) (footnote omitted).

The Fifth Circuit has not yet addressed pendent personal jurisdiction, although numerous other circuits have approved the doctrine.  *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765, 783 (N.D. Tex. 2008) (Fitzwater, C.J.) (detailing other circuits' adoption of the doctrine).  As with supplemental subject matter jurisdiction,[3] the exercise of pendent personal jurisdiction is discretionary with the court.  *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004); *Botefuhr*, 309 F.3d at 1273; *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 4 (D.C. Cir. 1977).

In this case, the court declines to extend pendent personal jurisdiction because it is unable to find that the state-law and Lanham Act claims arise from a common nucleus of operative fact. The state-law claims arise out of the TTA, and the Lanham Act claims arise out of the use of a trademark that is not mentioned in the TTA.  Pinnacle itself concedes that "[t]he trademark claims are not related to the contract claims."  P. Mot. Dis. Br. 1.

Thus the court declines to exercise pendent personal jurisdiction over Spinnaker concerning Pinnacle's state-law claims.

_____

[3]Pinnacle's argument that the court should extend specific jurisdiction over Spinnaker to its state-law claims using supplemental jurisdiction is unavailing.  Supplemental jurisdiction concerns *subject matter* jurisdiction; it does not of itself confer *personal* jurisdiction over a party.

IV

The court considers next whether it has general personal jurisdiction over Spinnaker, and it holds that it does not.

General jurisdiction exists when "a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic. The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys. Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)) (other citations omitted). Spinnaker markets its products in Texas in a limited way through open houses, care packages, and direct sales calls by its sales representative for the region, which also includes Louisiana. But "Spinnaker does not direct its advertising to Texas as distinguished from any other state." D. App. 2. Spinnaker sells products in Texas. Pinnacle asserts that Spinnaker expected to sell $900,000 worth of products in Texas and Louisiana in 2006.[4] But Spinnaker is not a Texas corporation, and it has no offices or registered agents in Texas. Spinnaker employs 215 people in Ohio and none in Texas. Although Pinnacle alleges in its complaint that, when it first met with Spinnaker, Spinnaker

---

[4]Pinnacle provides no context in which to evaluate this number. Regarding the allegedly infringing labels, Pinnacle states that Texas sales were 6.4% of all the sales reported for the labels. Spinnaker places that figure at 3.6%.

represented that it had an office in Texas, there is no other evidence to suggest that such an office ever existed. The most significant contact may be that Spinnaker contracted with an independent contractor to be a sales representative to the Texas region, but sending sales representatives is not sufficient to create general jurisdiction. *See Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (finding insufficient contacts to support general jurisdiction even though defendant "apparently sen[t] sales people to the state on a regular basis to develop business, negotiate contracts, and service national accounts[.]"); *Seitz v. Envirotech Sys. Worldwide Inc.*, 513 F.Supp.2d 855, 863 (S.D. Tex. 2007) (finding appointment of Texas sales representative insufficient to establish personal jurisdiction). Because the contacts sufficient to create general personal jurisdiction must be continuous, systematic, and extensive, the court concludes that it lacks general personal jurisdiction over Spinnaker.

Therefore, because the court lacks specific or general personal jurisdiction over the state-law claims, it dismisses them without prejudice for lack of personal jurisdiction. The court concludes that it does have personal jurisdiction over Spinnaker regarding the Lanham Act claims.

V

Spinnaker moves in the alternative to transfer this action to the Southern District of Ohio.[5]

A

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F.Supp. 1131, 1137 (S.D. Tex. 1983)).  The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other.  *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.) (citing *Enserch Int'l Exploration, Inc. v. Attock Oil Co.*, 656 F. Supp. 1162, 1167 n.15 (N.D. Tex. 1987) (Fitzwater, J.)).  Moreover,

_____

[5]The court will assume that Pinnacle is headquartered in Texas for purposes of deciding the motion to transfer, although Spinnaker contests this premise.

- 17 -

> [t]he plaintiff's choice of venue is . . .
> entitled to deference, and therefore the party
> seeking transfer has the burden to show good
> cause for the transfer. The burden on the
> movant is "significant," and for a transfer to
> be granted, the transferee venue must be
> "clearly more convenient than the venue chosen
> by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL
774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes
omitted) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315
(5th Cir. 2008) (en banc) ("*Volkswagen II*")).

B

The court must decide as a preliminary question "whether the
judicial district to which transfer is sought would have been a
district in which the claim could have been filed."  *In re
Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam)
("*Volkswagen I*"); *Volkswagen II*, 545 F.3d at 312 ("The preliminary
question under § 1404(a) is whether a civil action 'might have been
brought' in the destination venue.").  Once the court resolves this
issue, the court must, in deciding whether to transfer the case,
evaluate "a number of private and public interest factors, none of
which are given dispositive weight." *Volkswagen I*, 371 F.3d at 203
(citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337,
340 (5th Cir. 2004)).

> The private concerns include: (1) the relative
> ease of access to sources of proof; (2) the
> availability of compulsory process to secure
> the attendance of witnesses; (3) the cost of
> attendance for willing witnesses; and (4) all
> other practical problems that make trial of a
> case easy, expeditious and inexpensive. The
> public concerns include: (1) the
> administrative difficulties flowing from court
> congestion; (2) the local interest in having
> localized interests decided at home; (3) the
> familiarity of the forum with the law that
> will govern the case; and (4) the avoidance of
> unnecessary problems of conflict of laws [or]
> the application of foreign law.

*Id.* (citations and quotation marks omitted; bracketed material added). "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. Spinnaker must establish "good cause" for transferring the case, meaning that, "in order to support its claim for a transfer, [it] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen II*, 545 F.3d at 315 (brackets in original) (quoting § 1404(a)).

C

Spinnaker must first establish that the Lanham Act claims might have been brought in the Southern District of Ohio.

> "[A] transfer is authorized by [28 U.S.C.
> § 1404(a)] only if the plaintiff had an
> 'unqualified right' to bring the action in the
> transferee forum at the time of the
> commencement of the action; i.e., venue must
> have been proper in the transferee district

- 19 -

> and the transferee court must have had power
> to command jurisdiction over all of the
> defendants."

*Ill. Union Ins. Co. v. Tri Core Inc.*, 191 F.Supp.2d 794, 797 (N.D. Tex. 2002) (Lynn, J.) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)) (brackets and quotation marks in original); *see also Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987). Thus to transfer this case to Ohio, the court must find that Ohio has both personal jurisdiction over Spinnaker and that Ohio is a proper venue for this action.

Because the Lanham Act claims are federal claims, venue is decided by 28 U.S.C. § 1391(b)(1), which states that venue is proper in "a judicial district where any defendant resides," which in this case would be Ohio. Pinnacle does not directly contest that venue would be proper in Ohio, but it does argue that the only evidence presented so far is proof of the labels sold in Texas. Despite where the sale of the products took place,[6] however, venue could be established in Ohio because Spinnaker's headquarters are located in Ohio.

Spinnaker does not dispute that Ohio has personal jurisdiction

---

[6]Although there is no evidence that the allegedly infringing labels were sold outside of Texas, there also is no reason to presume that they were only sold in Texas, because Pinnacle has only adduced evidence that Texas sales were 6.4% of Spinnaker's total national sales of the Pinnacle line.

- 20 -

over it and that venue would be proper in the Southern District of Ohio, D. Aug. 25. 2009 Corrected Br. 4, and it requests in its alternative motion to transfer that this lawsuit be transferred to the Southern District of Ohio.

The court concludes that Pinnacle's Lanham Act claims might have been brought against Spinnaker in the Southern District of Ohio.

D

The court turns initially to the private interest factors.

1

The first private interest factor concerns the relative ease of access to sources of proof. Spinnaker has presented evidence that one-half of the persons with knowledge of the facts are located in Troy, Ohio. According to Ahlfeld, a Spinnaker Vice President, 20 individuals are believed to have knowledge of facts relevant to this lawsuit. Of these, ten are located in Troy, Ohio, and five are located in Buffalo, New York. The remaining five are located in Florida, California, Michigan, Connecticut, and Pennsylvania. According to Ahlfeld, none is located in Texas.[7] Ahlfeld also avers that "[a]ll of Spinnaker's business records and other evidence under Spinnaker's control relevant to this

---

[7]Ahlfeld lists Cochran as located in New York. *See* D. App. 4. Because, for purposes of analyzing the first factor, it is irrelevant whether Cochran should be treated as located in New York or Texas, the court need not decide in which state he is located.

litigation are maintained at Spinnaker's principal office in Troy, Ohio." D. App. 5.

In support of Pinnacle's response, Cochran avers that 14 persons listed on Spinnaker's list of witnesses have nothing to do with whether Spinnaker infringed Pinnacle's trademarks or breached the TTA. But Pinnacle does not dispute that the documentary evidence is located in Ohio. "The Fifth Circuit [has] held that despite technological advances that [have] made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis." *AT & T Intellectual Prop.*, 2009 WL 774350, at *2; *see Volkswagen II*, 545 F.3d at 316 ("[T]he sources of proof requirement is a meaningful factor in the analysis." (citing *Volkswagen I*, 371 F.3d at 203)). The court holds that this factor slightly favors transferring the case to Ohio. *See AT & T Intellectual Prop.*, 2009 WL 774350, at *4 (holding that this factor slightly favored transfer where defendant showed that relevant documents resided in transferee district and plaintiff did not show that any relevant documents were located in the Northern District of Texas).

2

The second factor addresses the availability of compulsory process to secure the attendance of witnesses.

Spinnaker contends that all the witnesses are located outside Texas and that there are no unwilling witnesses over whom this

court can issue compulsory process, whereas the Ohio court would have this power as to several witnesses located in Ohio.  It does not identify in its motion, however, any non-party witnesses who are unwilling to testify without being subpoenaed and who would be subject to compulsory process in Ohio but not in Texas.  Instead, it simply identifies the non-party witnesses.

In response, Pinnacle makes the conclusory assertion that the witnesses whom it will need to prove offending trademark sales will not be amenable to process in Ohio.  But it does not identify any witnesses who would be unwilling to testify in Ohio if the trial were held there.  And, in a seeming contradiction, Pinnacle also asserts that there are Texas witnesses "willing and able to testify."  P. Mot. Trans. Br. 6.  Although Pinnacle does not concede that these witnesses would be willing to testify not only at a trial held in Texas but also at one in Ohio, it fails to assert that they would be unwilling to testify in Ohio and that compulsory process would be required.

The court therefore concludes that this factor is neutral because the availability of compulsory process favors neither forum.

3

The third factor examines the cost of attendance for willing witnesses.

Spinnaker maintains that this factor weighs heavily in favor

- 23 -

of transferring the case because the key witnesses in this case are the parties' officers and employees, and they are located near the parties' respective operations in Troy, Ohio and Buffalo, New York, but not in Dallas.  It posits that non-party witnesses who are likely to testify are also concentrated closer to Dayton, Ohio than to Dallas.  Addressing the relative proximity of the witnesses to Ohio and Texas, Spinnaker reasons that maintaining the lawsuit in Dallas will be convenient to no witnesses, and that if the case is transferred to Dayton, Ohio, almost half the witnesses will avoid substantial travel inconvenience.  It also asserts that Dayton, Ohio is significantly closer to, and more convenient for, Buffalo, New York-area witnesses.  Regarding witnesses located outside Troy, Ohio and Buffalo, New York, Spinnaker argues that the distances from Michigan, Connecticut, and Pennsylvania to Dayton, Ohio are considerably closer than from those locations to Dallas.

Pinnacle responds that there are Texas witnesses.  It identifies Cochran, Don Clampitt, and Jim Waterman.  Pinnacle asserts that there are several Texas-based companies who have witnesses who are willing and able to testify about placing Spinnaker's offending products into the stream of commerce, although it does not specifically identify these witnesses.  And it names Spinnaker's Texas sales representative, Mike Darpel, who is believed to reside in Kansas City, Kansas.  Pinnacle contends that Cochran is unaware of any New York witnesses who have relevant

- 24 -

knowledge about Pinnacle's trademark claim.  And it maintains that all of the Ohio witnesses can be compelled to testify in Texas because they are Spinnaker employees.

The court finds that this factor is neutral.  Although Spinnaker has established at a general level that the persons from whom its witnesses are likely to be drawn are located geographically closer to Dayton, Ohio than to Dallas, and Pinnacle has identified only four persons by name who might be located closer to Dallas than to Dayton, Ohio, Spinnaker has not, as it must, "identif[ied] the 'key witnesses and the general content of their testimony.'"  *Sargent v. Sun Trust Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One*, 211 F.Supp.2d at 812).  Spinnaker asserts that "the key witnesses in this litigation are officers and other employees of the parties."  D. Aug. 25, 2009 Corrected Mot. Trans. Br. 6.  But in the Ahlfeld affidavit, he does not identify the *key* witnesses, and he provides "a general statement of their basis for having knowledge of facts relevant to this litigation," D. App. 3, not "the general content of their testimony."

4

The fourth private interest factor is perhaps the most important one in this case: the practical problems that make trial of a case easy, expeditious, and inexpensive.  Because the court has dismissed all of the state-law claims for lack of personal

jurisdiction, it will be far more convenient for the parties to litigate all of their claims at once in a venue that has personal jurisdiction over Spinnaker for both the state-law and Lanham Act claims.[8]  Because Spinnaker is headquartered in Ohio and Ohio has jurisdiction over it, all of the claims could be litigated in Ohio. Ohio would be a superior venue to Texas because, if the case is litigated in Ohio, the parties can avoid costly piecemeal litigation.  This factor weighs in favor of transferring the case to Ohio.

E

The court now considers the public interest factors.

1

First, the court evaluates differences in the administrative difficulties flowing from court congestion among the potential venues.  Neither party has presented any evidence that the administrative difficulties in Texas would be greater than in Ohio. This factor is neutral.

---

[8]There is no indication that Pinnacle would prefer to drop its state-law claims and litigate only the Lanham Act claims in this forum. Considering that the state-law claims arise out of the TTA, and that the Lanham Act claims arise out of the use of a trademark that is not mentioned in the TTA, it is unlikely that Pinnacle will simply forgo pursuing its state-law causes of action.  It is therefore likely that this litigation will continue in two fora if the court does not transfer Pinnacle's Lanham Act claims to the forum where Pinnacle is likely to be able to pursue its state-law claims.

2

The second factor considers the local interest in the dispute. There may be a local interest in the case in Texas because Pinnacle is a Texas corporation, but the interest is also strong in Ohio, where Spinnaker is based. The fact that the allegedly infringing labels were sold in Texas as well as in many other locales does not support a finding of a particular local interest in Texas. In *Volkswagen II* the court found that the sale of an allegedly defective product in the district, in addition to districts throughout the country, did not create a particularized "local interest" in the dispute, because the "provided rationale could apply virtually to any judicial district or division in the United States." *Volkswagen II*, 545 F.3d at 318.[9] This factor is neutral.

3

The third and fourth factors address, respectively, the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws or the application of foreign law. Because the Lanham Act claims are based on federal law, both the Southern District of Ohio and this court are familiar with the law. There likewise are no apparent problems of conflict of laws or applying foreign laws. These

---

[9]Pinnacle cites *Luv n' care*, 438 F.3d at 471, for the proposition that sale of an infringing product in a district creates a local interest in the resulting dispute. The court notes that the *Luv n' care* court was not considering local interest in the context of a § 1404(a) motion to transfer.

factors are neutral.

                                F

    Considering all of the factors together, the court finds that
the Southern District of Ohio is clearly more convenient when
compared to this court.

    Although almost all of the private and public interest factors
are neutral, one of them that favors transferring this case does so
strongly, and it focuses directly on promoting the convenience of
the parties and witnesses.  If the court transfers this case to the
Southern District of Ohio, Pinnacle can pursue its Lanham Act
claims in a forum that can also exercise personal jurisdiction over
Pinnacle's state-law claims, avoiding the costs and inconvenience
of litigating in two distant fora.  If the court denies Spinnaker's
motion, the parties most certainly will incur the expense and
inconvenience of bringing witnesses and evidence to Ohio and Texas.

    Accordingly, in its discretion, and for the convenience of the
parties and witnesses and in the interest of justice, the court
grants Spinnaker's motion to transfer Pinnacle's Lanham Act claims
to the Southern District of Ohio.[10]

_____

    [10]In Pinnacle's response brief to Spinnaker's motion to
dismiss, it challenges Spinnaker's reliance on alleged hearsay.  It
contends that "Spinnaker also states as 'facts' numerous falsehoods
concerning Pinnacle's princip[al] place of business and its office
based upon a newspaper article that Spinnaker takes great liberty
with; including liberally using hearsay reporting rather than
statements of a party."  P. Mot. Dis. Br. 2.  Spinnaker filed a
response to the hearsay objection, and Pinnacle filed a reply to
the response.  Spinnaker then filed a motion to strike Pinnacle's

\*       \*       \*

For the reasons explained, the court grants in part and denies in part Spinnaker's July 6, 2009 motion to dismiss.  The court grants the motion to the extent that it dismisses Pinnacle's state-law claims against Spinnaker for lack of personal jurisdiction.[11] The court grants Spinnaker's July 6, 2009 motion to transfer venue to the extent that it transfers Pinnacle's Lanham Act claims to the Southern District of Ohio under § 1404(a).[12]  By Rule 54(b) judgment filed today, the court dismisses without prejudice Pinnacle's state-law claims against Spinnaker.

**SO ORDERED.**

November 12, 2009.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

reply, contending that it included supplemental evidence.  The court need not address these matters because, in deciding the motion to dismiss, the court is not relying on hearsay evidence.

[11]The court need not decide Spinnaker's motion to dismiss under Rule 9(b) because it concludes that it lacks personal jurisdiction over Pinnacle's state-law claims.

[12]Spinnaker requests that the court transfer the case to the Western Division of the Southern District of Ohio.  The court leaves to the transferee court the assignment of this case to a particular division.

- 29 -